No. 91-513

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

EDGEWATER TOWNHOUSE
HOMEOWNER'S ASSOCIATION,

       Plaintiff, Respondent,
          and Cross-Appellant,

  -vs-

ROGER HOLTMAN,

       Defendant, Appellant,
          and Respondent on Cross-Appeal.


APPEAL FROM:   District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Douglas Harkin, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Charles J. Tornabene; Patterson, Marsillo,
          Tornabene, Schuler & McKenna, Missoula, Montana

      For Respondent:

          Lon Dale; Milodragovich, Dale & Dye, Missoula
          Montana

      For Amicus Curie:

          William O. Bronson; James, Gray & McCafferty, Great
          Falls, Montana (MT Big Sky Paralegals Assoc.; Natl.
          Assoc. of Legal Assts. (NALA); Natl. Fed. of
          Paralegal Assoc.; and Legal Asst. Mngmnt Assoc.)

FILED

JAN 12 1993

Filed:
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  March 12, 1992

Decided:  January 12, 1993

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Roger Holtman appeals from a judgment of the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of the Edgewater Townhouse Homeowner's Association and dismissing his counterclaim. The Edgewater Townhouse Homeowner's Association cross-appeals the District Court's denial of claimed attorney's fees for attorney-supervised paralegal work.

We phrase the issues on appeal as follows:

1) Did the District Court err in granting summary judgment for the Association?

2) Did the District Court err in dismissing Holtman's counterclaim?

The Edgewater Townhouse Homeowner's Association (the Association) is a condominium association of eleven condominiums located in Missoula. The Association is governed by its articles of incorporation and its bylaws, filed respectively with the Montana Secretary of State and the Missoula County Clerk and Recorder. Pursuant to Art. I, Sect. 3 of the bylaws, all owners or occupants of the units are subject to the rules contained in the bylaws and articles of incorporation. Roger Holtman (Holtman) purchased Unit #1 in 1985.

In March of 1988, the Association held meetings to discuss the installation of a new heating system for the condominiums. Holtman opposed installing a new system and argued to either repair the existing central heating system or allow the unit owners to

2

purchase individual systems of their choice. At a meeting on August 23, 1988, the unit owners present voted to install a Weil-McLain heating system. Holtman did not attend the meeting. After receiving bids, the Association assessed each member $3,900 to cover the costs. Holtman subsequently refused to pay the assessment or allow the Association access to his condominium to install the new system.

On February 5, 1989, while Holtman was out of town, a neighbor heard running water in Holtman's condominium. A meeting of the Board members was called and the situation was declared an emergency requiring entry into Holtman's unit. After a unit owner entered Holtman's condominium, the Association authorized a plumber to fix the leak and install the new heating system. When Holtman returned, he found that he was locked out of his damaged condominium, the new heating system was partially installed and, allegedly, asbestos contaminated his basement. He refused to allow further installation or pay for the heating system.

The Association filed a complaint on February 17, 1989, seeking an injunction to require the installation of the new heating system, damages, costs and attorney's fees. Holtman answered by generally denying the Association's allegations. On May 10, 1989, Holtman filed a third-party complaint against the individual unit owners, claiming they had deprived him of his property rights, invaded his privacy, and wrongfully contaminated his condominium with asbestos. Nearly a year later, the District Court granted the Association's motion for an "alternative writ" to

3

require the installation of the Weil-McLain heating system, and determined that the installation was necessary to preserve the property during the litigation. On September 17, 1990, the District Court granted the third-party defendants' motion for summary judgment and dismissed the third-party complaint. Although the judgment was certified as final pursuant to Rule 54(b), M.R.Civ.P., Holtman did not appeal.

On January 14, 1991, the Association moved for summary judgment on its complaint. Two weeks later, Holtman responded by filing a counterclaim against the Association without obtaining leave of court; the allegations against the Association mirrored those made against the individual unit owners in Holtman's earlier third-party complaint. On February 14, 1991, the Association moved to dismiss or strike the counterclaim. On June 4, 1991, the District Court filed orders granting both the motion for summary judgment and the motion to strike the counterclaim. In entering judgment, the District Court awarded the Association $16,367.92 in attorney's fees; that amount was decreased by $4,000 in a supplemental judgment in response to Holtman's objection. Both parties appeal.

Did the District Court err in granting summary judgment for the Association?

Under Rule 56(c), M.R.Civ.P., summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Summary judgment was not intended, nor can it be used, as a substitute for existing methods in the trial of issues of fact. Hull v. D. Irvin Transport (1984),

4

213 Mont. 75, 81, 690 P.2d 414, 417.

In granting the Association's motion for summary judgment, the District Court stated that the Association complied with its bylaws and applicable statutes in changing the heating system and entering Holtman's condominium. Specifically, it found that six of the eleven unit owners voted for installation of the heating system at the August 23, 1988, meeting. On that basis, the court further found that the quorum and voting majority requirements of the bylaws were met. We conclude that the District Court improperly decided disputed issues of fact.

Insofar as the bylaws are pertinent here, one membership in the incorporated association is appurtenant to each unit. Consequently, each unit is allowed only one vote. As a result, there are a total of eleven votes in the Association. Regardless of the number of individuals who may co-own one unit, the unit nevertheless can cast only one vote at Association meetings. The bylaws also provide that a majority vote at a meeting at which a quorum is present is binding upon all unit owners. A quorum requires the representation in person or by proxy of 50% of the total authorized votes and a majority is defined as more than 50% of the total authorized votes.

The District Court relied on the minutes of the August 23 meeting in determining that the Association complied with its bylaws. The minutes list the six individuals present as Ken, Mike, Doug, Lois and Jerry, and Andrea. In numerous references in the record, the names "Lois and Jerry Covault" appear to refer to the

5

co-owners of one unit. Because each unit has only one vote to cast, it is possible that only five of eleven voting units were present at the meeting in question. If this is the case, no quorum existed because the bylaws require the presence of unit owners having 50% of the total authorized votes to constitute a quorum for the transaction of Association business.

In light of Holtman's contention that the Association did not comply with the procedures as required by its bylaws in deciding to change the heating system, a genuine issue of material fact exists regarding whether a quorum existed at the August 23, 1988, meeting. Absent a quorum, no decision made at that meeting is binding on other unit owners. We conclude that the District Court erred in granting summary judgment.

Did the District Court err in dismissing Holtman's counterclaim?

In responding to the Association's February 17, 1989, complaint, Holtman generally denied the allegations and did not assert a counterclaim. On February 1, 1991, Holtman filed a counterclaim against the Association without leave of court. The District Court determined that the counterclaim arose out of the same transaction or occurrence as the Association's complaint filed in February, 1989; therefore, it was a compulsory counterclaim governed by the timeliness requirements of Rule 13(a), M.R.Civ.P. Applying Rule 13(f), M.R.Civ.P, which governs omitted counterclaims, the District Court dismissed the untimely counterclaim because Holtman did not obtain leave of court.

Holtman does not dispute the District Court's characterization

6

of his counterclaim as compulsory under Rule 13(a), M.R.Civ.P. He argues that the District Court's result was unduly harsh and that "justice requires" the acceptance of the counterclaim under these circumstances.

We look to Rule 13(f), M.R.Civ.P., in addressing this issue:

> When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.

Although we have not interpreted this subsection of Rule 13, M.R.Civ.P., we have held generally that the decision to allow an amendment is left to the discretion of the trial court. Stanford et al. v. Rosebud County et al. (Mont. 1992), ___ P.2d ___, 49 St.Rep. 828-30. In interpreting the identical federal rule, the Ninth Circuit Court of Appeals has held that a trial court's denial of leave to assert an omitted counterclaim under Rule 13(f), F.R.Civ.P., is reversible only when it constitutes an abuse of discretion, even though the rule is generally applied liberally. Ralston-Purina Co. v. Bertie (9th Cir. 1976), 541 F.2d 1363, 1367. We adopt that standard of review for the issue before us.

In a case factually analogous to the one before us, the Third Circuit Court of Appeals affirmed a trial court's dismissal of an untimely compulsory counterclaim for failure to meet the "leave of court" requirement of Rule 13(f), F.R.Civ.P. Owens-Illinois, Inc. v. Lakeshore Lane Co. (3d. Cir. 1979), 610 F.2d 1185, 1188. Here, as in Owens, Holtman filed his counterclaim nearly two years after his answer and did not obtain leave of court to do so, as required by Rule 13(f), M.R.Civ.P. Under these circumstances, we hold that

the District Court did not abuse its discretion in dismissing Holtman's untimely counterclaim. To hold otherwise would render the "leave of court" requirement of Rule 13(f), M.R.Civ.P., meaningless.

We note that the District Court's award and denial of certain attorney's fees is based in part on its grant of summary judgment to the Association. In light of our conclusion that summary judgment was in error, we vacate the award of attorney's fees.

Affirmed in part, reversed in part, and remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

8

January 12, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Charles J. Tornabene
PATTERSON, MARSILLO, TORNABENE, SCHULER & McKENNA
113 South 5th East
Missoula, MT 59801

Lon Dale
MILODRAGOVICH, DALE & DYE, P.C.
P.O. Box 4797
Missoula, MT 49806-4797

William O. Bronson
James, Gray & McCafferty
P.O. Box 2885
Great Falls, MT 59403
 Natl. Fed. of Paralegal Assoc.)

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy