No. 93-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ROGER HOLTMAN,

      Plaintiff and Appellant,

  -vs-

4-G's PLUMBING & HEATING, INC.,
a corporation,

      Defendants and Respondents.

FILED

APR 5 - 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Charles J. Tornabene; Patterson, Marsillo,
Tornabene, Schuyler & McKenna, Missoula, Montana

    For Respondent:

        Ronald A. Bender; Worden, Thane & Haines,
Missoula, Montana

Submitted on Briefs:  December 16, 1993

Decided: April 5, 1994

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Roger Holtman (Holtman) appeals from an order entered by the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of 4-G's Plumbing and Heating, Inc. (4-G's Plumbing). The court determined that dismissal with prejudice of Holtman's counterclaim in a previous lawsuit barred his trespass, invasion of privacy and asbestos contamination claims against 4-G's Plumbing under the doctrines of res judicata and collateral estoppel. Holtman asserts error only in the court's application of the doctrines to his asbestos contamination claim. Because all of the elements of res judicata and collateral estoppel are not met, we reverse the court's grant of summary judgment in favor of 4-G's Plumbing on that claim.

Holtman owned a condominium located in the Edgewater Townhouse Complex in Missoula, Montana. In February of 1989, the Edgewater Townhouse Homeowner's Association (the Association) authorized an employee of 4-G's Plumbing to enter Holtman's condominium, in his absence, to repair a leak and install a new heating system. When Holtman returned to his condominium, he discovered a partially installed heating system and alleged asbestos contamination. Holtman refused to allow further installation of the system.

The Association filed a complaint seeking an injunction to require the installation of the heating system. Holtman responded by generally denying the Association's allegations. Nearly two years later, Holtman filed a counterclaim without leave of court.

2

He alleged that the Association had deprived him of property rights, invaded his privacy, and contaminated his condominium with asbestos. In addition to other rulings, the court dismissed the counterclaim with prejudice because the compulsory counterclaim was not timely filed under Rule 13(a), M.R.Civ.P., and Holtman had failed to obtain leave of court pursuant to Rule 13(f), M.R.Civ.P. Both Holtman and the Association appealed. We affirmed the dismissal of Holtman's counterclaim in Edgewater Townhouse v. Holtman (1993), 256 Mont. 182, 845 P.2d 1224.

In January of 1992, Holtman filed the present action against the Association and 4-G's Plumbing, asserting claims of invasion of privacy, trespass, and asbestos contamination. The Association moved for summary judgment, arguing that the claims were barred by res judicata. 4-G's Plumbing joined in the Association's motion and filed a separate motion for summary judgment relying on both res judicata and collateral estoppel. The District Court granted summary judgment for each defendant by separate order, dismissing the claims against the Association under res judicata and the claims against 4-G's Plumbing under res judicata and collateral estoppel. Holtman appeals only from the summary adjudication in favor of 4-G's Plumbing.

Our standard for reviewing a grant of summary judgment is the same as that used by the district court. Emery v. Federated Foods (Mont. 1993), 863 P.2d 426, 431, 50 St.Rep. 1454, 1456. Initially, we determine whether there is an absence of genuine issues of material fact. Minnie v. City of Roundup (1993), 257 Mont. 429,

3

431, 849 P.2d 212, 214. The party moving for summary judgment has the initial burden of demonstrating a complete absence of any genuine factual issues. D'Agostino v. Swanson (1990), 240 Mont. 435, 442, 784 P.2d 919, 924. In order to meet this burden, the moving party must support its motion with an appropriate evidentiary basis. Minnie, 849 P.2d at 214. The moving party may draw from the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. Rule 56(c), M.R.Civ.P.

Once an absence of genuine issues of material fact is established, we determine whether the moving party is entitled to judgment as a matter of law. Minnie, 849 P.2d at 214. Here, the District Court concluded that 4-G's Plumbing was entitled to summary judgment under the doctrines of res judicata and collateral estoppel. We do not defer to a district court's legal conclusions, but determine whether they are correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

## Res Judicata

The doctrine of res judicata is grounded on the principle that litigation must at some point come to an end. Orlando v. Prewett (1989), 236 Mont. 478, 481, 771 P.2d 111, 113. It bars the relitigation of an entire cause of action once a final judgment has been entered. Marriage of Stout (1985), 216 Mont. 342, 349, 701 P.2d 729, 733. All of the following elements are necessary for res judicata to apply:

4

1) the parties or their privies must be the same;

2) the subject matter of the action must be the same;

3) the issues must be the same and relate to the same subject matter; and

4) the capacities of the persons must be the same in reference to the subject matter and to the issues.

Tisher v. Norwest Capital Mgmt. (Mont. 1993), 859 P.2d 984, 987-88, 50 St.Rep. 960, 962.

Holtman asserts that his "asbestos contamination" claim alleges negligent workmanship on the part of 4-G's Plumbing in the installation of the heating system. Because his prior counterclaim against the Association contained no such claim, he argues that none of the elements of res judicata is met. 4-G's Plumbing urges application of the doctrine, asserting that the claims advanced in the complaint do not contain an allegation of negligent workmanship, but are identical to those raised in the prior counterclaim.

Holtman's asbestos contamination claim reads as follows:

That said defendant, 4-G's Plumbing & Heating, Inc., in the process of installing said hot water heating system in Plaintiff's home, disturbed older plumbing pipes, which were contaminated with asbestos, resulting in asbestos contamination of Plaintiff's home and the personal property contained therein.

This asbestos contamination claim--as alleged--is hardly a model of clarity. However, 4-G's Plumbing did not move for summary judgment on the basis of a failure to state a claim upon which relief could be granted or challenge the claim as alleged in any other way. We decline to rule on an issue that was not presented to the District Court. Goodover v. Lindey's, Inc. (1992), 255 Mont. 430, 441, 843

5

P.2d 765, 772. Thus, we address the applicability of <u>res judicata</u> to Holtman's asbestos contamination claim to the extent that claim is read to allege negligent workmanship by 4-G's Plumbing in the installation of the heating system.

The "parties or their privies" element of <u>res judicata</u> is dispositive here. It is undisputed that 4-G's Plumbing was not a party to the prior litigation. The District Court determined, however, that 4-G's Plumbing and the Association were privies because they "acted in concert."

We previously have focused on whether a defendant's legal right or interest has been represented by the previous litigant to determine whether the two are privies. As we stated in Brault v. Smith (1984), 209 Mont. 21, 27, 679 P.2d 236, 239, the concept of a "privy" in the context of a judgment applies to one whose interest has been legally represented at trial. We have similarly defined privies as those who are so connected in estate or in blood or in law as to be identified with the same interest and, consequently, affected with each other by litigation. <u>Tisher</u>, 859 P.2d at 988.

As the party moving for summary judgment, 4-G's Plumbing had the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law on the privity element. 4-G's Plumbing did not file an answer to Holtman's complaint; nor did it submit any depositions, answers to interrogatories, admissions or affidavits to support its motion for summary judgment. Thus, it did not provide any evidentiary basis

6

for summary adjudication.

By joining the Association's motion for summary judgment, however, 4-G's Plumbing ostensibly adopted the Association's evidentiary basis for summary judgment, including copies of the prior counterclaim, the order striking it with prejudice, and the findings and rulings contained in the court file relating to the previous litigation. Therefore, we focus on whether these materials form a sufficient basis for summary judgment on the issue of privity--a shared legal interest--between the Association and 4-G's Plumbing on the asbestos contamination claim.

The materials indicate that the Association hired 4-G's Plumbing and allowed its employee into the condominium to install the heating system, supporting the District Court's determination that the two "acted in concert" in entering the condominium. This mutual conduct in entering the condominium, however, does not establish that the Association shared a legal interest with 4-G's Plumbing with regard to its workmanship in the installation of the heating system. Thus, the court's conclusion that the Association and 4-G's Plumbing are privies, in the context of the asbestos contamination claim, is incorrect.

4-G's Plumbing attempts to establish a shared legal interest in the asbestos contamination claim to the extent that claim alleges negligent workmanship by arguing that it acted as an agent of the Association in installing the heating system. An agency relationship would exist if the Association controlled or had the right to control the physical conduct of 4-G's Plumbing in the

7

installation of the heating system. See Eccleston v. Third Jud. Dist. Ct. (1989), 240 Mont. 44, 51-52, 783 P.2d 363, 368, quoting Restatement (Second) of Agency, § 2. Nothing in the record of the prior litigation or the present case establishes such a right of control. We conclude that the materials relied on by 4-G's Plumbing to support summary adjudication do not establish that it was a privy of the Association with regard to the asbestos contamination claim.

4-G's Plumbing advances two other arguments, loosely tied to the doctrine of res judicata, to bar Holtman's asbestos contamination claim. Based on its assertion that Holtman could have raised the claim in the prior proceeding, 4-G's Plumbing argues that he is barred by the doctrine from doing so here.

It is true that res judicata precludes claims that could have been raised in the prior lawsuit as well as those actually adjudicated. Beck v. Flathead County (1989), 240 Mont. 128, 133, 783 P.2d 383, 386; Orlando v. Prewett (1989), 236 Mont. 478, 481, 771 P.2d 111, 113. The preclusive effect of res judicata, however, applies only to claims raised in subsequent lawsuits between the parties in the original action or their privies, reflecting the "parties or their privies" element of the doctrine. Beck, 783 P.2d at 386; Orlando, 771 P.2d at 113. Thus, res judicata's preclusive effect as to claims not actually litigated does not apply to the case before us.

Finally, 4-G's Plumbing asserts that Rule 12(b), M.R.Civ.P., required Holtman to assert his claims against it in the prior

litigation. Rule 12(b), M.R.Civ.P., requires that every defense to a claim, counterclaim or third-party claim be raised in the responsive pleading. Holtman's claims against 4-G's Plumbing were not a defense to the claims asserted by the Association in the prior litigation. Thus, he was not required by Rule 12(b), M.R.Civ.P., to file his claims against 4-G's Plumbing in that action.

4-G's Plumbing has not demonstrated that the "parties or their privies" element of res judicata is met. We hold that the District Court erred in applying res judicata to bar Holtman's asbestos contamination claim against 4-G's Plumbing.

**Collateral Estoppel**

Again focusing entirely on the asbestos contamination claim, Holtman asserts that the District Court erred in concluding that 4-G's Plumbing was entitled to summary judgment under the doctrine of collateral estoppel. He contends that collateral estoppel does not bar the claim because the issue of 4-G's Plumbing's negligence was not raised in his prior counterclaim.

Collateral estoppel, sometimes referred to as issue preclusion, is a form of res judicata. While res judicata bars parties from relitigating claims in subsequent proceedings based on the same cause of action, collateral estoppel bars the reopening of an issue in a second cause of action that has been litigated and determined in a prior suit. Linder v. Missoula County (1992), 251 Mont. 292, 294, 824 P.2d 1004, 1005. The doctrine has three

9

elements:

> 1) the identical issue raised has been previously decided in a prior adjudication;
>
> 2) a final judgment on the merits was issued in the prior adjudication; and
>
> 3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication.

State v. Young (1993), 259 Mont. 371, 377, 856 P.2d 961, 965. Our analysis need not proceed beyond the first element.

Identity of issues is the most crucial element of collateral estoppel. Anderson v. State (1991), 250 Mont. 18, 21, 817 P.2d 699, 702. In order to satisfy this element, the identical issue or "precise question" must have been litigated in the prior action. Anderson, 817 P.2d at 702. To determine whether the issue raised is identical, we compare the pleadings, evidence and circumstances surrounding the two actions. Aetna Life Ins. Co. v. McElvain (1986), 221 Mont. 138, 146, 717 P.2d 1081, 1086. We note that we have only the asbestos-related allegations to examine from the previous litigation since Holtman's counterclaim was dismissed on legal grounds prior to the receipt of any evidence on the claim.

It is true that Holtman's prior counterclaim against the Association arose from the same events as his claim against 4-G's Plumbing and, like his present claim, sought damages for the alleged asbestos contamination. Holtman's asbestos-related contamination claim against the Association in the prior litigation was as follows:

> [The Association] did, without the knowledge or consent of [Holtman], terminate the heating service to

[Holtman's] unit sometime between March, 1988 and February 5, 1989, which resulted in certain waterlines freezing, breaking and creating water leaks in [Holtman's] unit and subsequently therewith caused the asbestos covering of certain pipes to be removed and generally distributed throughout the unit, all of which rendered [Holtman's] unit damaged, unsafe and uninhabitable.

When this claim is compared to Holtman's asbestos contamination claim against 4-G's Plumbing set forth above, it is clear that the identical issue, or precise question, raised in the present case was not raised and decided in the earlier litigation involving the Association.

Holtman's prior asbestos-related claim can be read as alleging an intentional wrongful act by the Association--the unauthorized termination of heat to the condominium--followed by all the damage that flowed therefrom, including broken waterlines and asbestos disturbance and distribution. To the extent the prior claim is read in this fashion, it is clear that the issue of the alleged negligence of 4-G's Plumbing in the present case is not identical.

Furthermore, to the extent the prior asbestos-related claim is read as an allegation of negligence against the Association resulting in asbestos contamination, that claim did not raise the issue of 4-G's Plumbing's negligent workmanship in the installation of the new heating system. A negligence action is premised, first, on the existence of a duty. Nautilus Ins. v. First National Ins. (1992), 254 Mont. 296, 299, 837 P.2d 409, 411. 4-G's Plumbing has not established that its legal duties to Holtman in installing the new heating system were co-extensive with the duties owed him by the Association.

11

We conclude that the "identical issue" element of collateral estoppel is not met under the circumstances before us. Therefore, we hold that the District Court erred in concluding that Holtman is collaterally estopped from asserting the asbestos contamination claim and in granting summary judgment in favor of 4-G's Plumbing on that claim.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12

April 5, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Charles J. Tornabene
Patterson, Marsillo, Tornabene, Schuyler & McKenna
103 So. 5th East
Missoula, MT 59801

Ronald A. Bender, Esq.
Worden, Thane & Haines, P.C.
P.O. Box 4747
Missoula, MT 59806

John R. Gordon, Esq.
Reep, Spoon & Gordon, P.C.
P.O. Box 9019
Missoula, MT 59807-9019

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy